NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBYN B.,<br><br>    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 25-781 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Robyn B.'s[1] ("Robyn" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Robyn's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

In this appeal, the Court must answer the following question: Did Administrative Law Judge Peter R. Lee ("Judge Lee") properly assess the record in determining Plaintiff's residual functional capacity?

### A.    PROCEDURAL POSTURE

On March 9, 2020, Robyn filed an application for a period of disability and disability insurance benefits, alleging an onset date of January 31, 2019. (Administrative Record ("AR") at

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

137–38.)[2] Robyn, at the time of the alleged disability onset date, was 44 years old.[3] ("Pl. Br.," ECF No. 9 at 2.) The Social Security Administration (the "Administration") denied these requests both initially (AR at 175–80) and on reconsideration (*id.* at 182–85). Thereafter, Robyn requested a hearing before an Administrative Law Judge ("ALJ"). (*See id.* at 186–87.) At a hearing on November 8, 2021, Judge Peter R. Lee ("Judge Lee") took testimony from both Robyn, represented by counsel, and Peter Manzi, a vocational expert ("VE"). (*Id.* at 77–113.) On February 23, 2022, Judge Lee issued a written decision, finding that Robyn was not disabled. (*Id.* at 148–166.)

On April 20, 2022, Robyn requested review by the Administration's Appeals Council. (*Id.* at 248–50.) Upon review of Judge Lee's February 2022 decision, the Appeals Council remanded the case for a new hearing and decision. (*Id.* at 167–72.) The Appeals Council concluded that Judge Lee had not properly evaluated the opinion of licensed clinical social worker ("LCSW") Alla Krutyansky, as Judge Lee had concluded that LCSW Krutyansky's opinions were not a valid medical source. (*Id.* at 169–70 (citing 20 CFR §§ 404.1520c, 404.1502(d)).) On remand, Judge Lee was instructed to properly evaluate LCSW Krutyansky's medical opinions, further consider Robyn's RFC, and obtain additional evidence from a VE as necessary. (*Id.* at 170.)

At the second hearing on October 24, 2023, Robyn—again represented by counsel—and Dr. Steven Feinstein, a VE, testified. On the hearing record, Robyn amended her claim to request disability insurance benefits for the closed period of November 1, 2019 through September 15,

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 6-1 through 6-9. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

[3] Although the record and briefing are inconsistent on Robyn's age on the alleged onset date, Robyn was born on June 6, 1975, meaning she was 44 years old on November 1, 2019. (AR at 322; *id.* at 36 (Judge Lee incorrectly stating that Robyn was 43 on onset date); Opp. Br. at 3 (Commissioner's brief stating the same).)

2023, as she had medically improved since Judge Lee's prior decision. (*Id.* at 52.) On February 5, 2024, Judge Lee issued a second written decision, again finding that Robyn was not disabled. (*Id.* at 21–43.) On April 4, 2024, Robyn once more requested review by the Administration's Appeals Council, (*id.* at 319–21), which was denied. (*Id.* at 1–6.)

This appeal followed. (ECF No. 1.) The AR was filed on the docket on April 1, 2025. (ECF No. 6.) Robyn then filed her moving brief ("Pl. Br.," ECF No. 9), the Commissioner filed an opposition ("Opp. Br.," ECF No. 11), and Robyn filed a reply ("Reply Br.," ECF No. 12).

**B.    JUDGE LEE'S DECISION**

In his second decision on February 5, 2024, Judge Lee held that Robyn was not disabled under the prevailing Administration regulations. (*See generally* AR at 24–37.) To reach this decision, Judge Lee analyzed Robyn's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). At Step One, Judge Lee found that Robyn had not engaged in substantial gainful activity from her alleged onset date of November 1, 2019 through September 15, 2023.[4] (*Id.* at 27 (citing 20 C.F.R. § 404.1571 *et seq.*).)

At Step Two, Judge Lee found that Robyn suffered from four severe impairments: hypertension, depressive disorder, anxiety disorder, and alcohol abuse disorder. (*Id.* (citing 20 C.F.R. § 404.1520(c)).) Judge Lee also found that Robyn had four "non-severe impairments:" left hip tendonitis, chronic kidney disease, history of Lyme's disease, and vertigo. (*Id.* (citing AR at

---

[4] Judge Lee noted that Robyn returned to work as a staff attorney for three months from July to September 2022. (AR at 27.) However, because Robyn did not work at her previous substantial gainful activity levels for more than six months and the work ended due to her impairments, Judge Lee concluded that this was simply "an unsuccessful work attempt" that did not affect his determination at Step One. (*Id.* (citing 20 C.F.R. § 404.1571 *et seq.*).)

490, 605, 752, 753, 757, 765, 809, 1096–97, 1114).) Judge Lee concluded that these non-severe

impairments did "not cause[] more than minimal limitation on the claimant's ability to perform

basic work activities" for the relevant time period based on medical evidence in the record.[5] (*Id.*

at 27–28, 32.)

At Step Three, Judge Lee determined that Robyn did not have an "impairment or

combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at

28–30 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge

Lee concluded that Robyn had the residual functional capacity ("RFC") to perform "light" work,

*see* 20 C.F.R. § 404.1567(b), but that any job she performed had to be limited in specified ways:

> The claimant can never climb ropes, ladders, or scaffolds; never be
> exposed to unprotected heights or hazardous machinery;
> occasionally climb stairs and ramps; never crawl; occasionally
> kneel; and frequently stoop and crouch; frequently balance. The
> claimant can have occasional contact with supervisors, co-workers,
> and the public; and is able to do only simple and routine tasks.

(AR at 30.) At Step Four, Judge Lee concluded that Robyn was not capable of performing her past

relevant work as a lawyer or judge. (*Id.* at 35 (citing 20 C.F.R. § 404.1565).) At Step Five, Judge

Lee, based on the testimony from the VE, determined that "the demands of [Robyn's] past relevant

work . . . exceed [Robyn's] residual functional capacity." (*Id.* at 35–36.) However, Judge Lee,

again relying on the VE's testimony, concluded that Robyn could perform certain jobs that existed

in significant numbers in the national economy (and that were consistent with her RFC), including

"marker," "mail clerk," and "photocopy machine operator." (*Id.* at 36–37 (citing 20 CFR §§

404.1569, 404.1569a).) Thus, because she could perform such work, Judge Lee concluded that

---

[5] Judge Lee also found that with respect to references in the record to Robyn's supposed fibromyalgia and
lupus, these were non-medically determinable impairments because such impairments were not established
by "objective medical evidence from an acceptable medical source." (*Id.* at 28 (citing AR at 1038, 1098).)
Robyn does not challenge these conclusions.

Robyn was not under a disability from November 1, 2019 through September 15, 2023. (*Id.* at 37 (citing 20 C.F.R. § 404.1520(g)).)

This appeal concerns Judge Lee's evaluation of Robyn's RFC. More specifically, Plaintiff challenges Judge Lee's analysis of (1) Robyn's own subjective testimony, and (2) the prior administrative medical findings ("PAMFs") and medical opinions in the record. (*See* Pl. Br. at 1.)

### 1. Robyn's Subjective Testimony

In determining Robyn's RFC as the precursor to Step Four, Judge Lee "careful[ly]" considered "the entire record."[6] (*Id.* at 30 (citing 20 C.F.R. §§ 404.1529, 404.1520c).) Judge Lee began his analysis by reviewing Robyn's reports of her symptoms in a July 10, 2020 function report. In that report, Robyn asserted that her "conditions adversely affect[ed] her abilities to bend, stand, walk, climb stairs, see, remember, complete tasks, and concentrate" but did not adversely affect her abilities to "lift, squat, reach, sit, kneel, talk, hear, use hands, understand, get along with others, and follow instructions." (*Id.* at 31 (citing AR at 401).) In the same report, Robyn stated that she could "drive a car; shop in stores; do the kid's laundry, cleaning, and the dishes; and pay bills." (*Id.* at 31 (citing AR at 397–400).)

Judge Lee next summarized Robyn's pre-remand hearing testimony from November 8, 2021. Robyn has a JD degree. (*Id.* (citing AR at 157).) Robyn testified that although she could do daily tasks for her children, she sometimes had difficulty performing these tasks. (*Id.*) She also testified to disliking being around a lot of people and often struggling with her short-term memory, but that she could nonetheless focus on television shows. (*Id.*) Robyn further testified to enjoying walking and reading to alleviate anxiety symptoms, as well as helping her mother-in-law take care

---

[6] Per her brief, Robyn "does not dispute the ALJ's findings regarding her physical impairments." (Pl's Br. at 2 n.4.) Thus, the Court will only very briefly summarize Judge Lee's findings regarding Robyn's physical impairments.

of her house. (*Id.*)

Judge Lee then turned to Robyn's testimony at the October 24, 2023 post-remand hearing. Summarizing Robyn's testimony, Judge Lee focused on the relevant updates to Robyn's health and employment since the last hearing. In particular, Judge Lee noted that Robyn worked as a full-time staff attorney at a law firm from July to September 2022. (*Id.* at 31) Judge Lee also noted that Robyn testified to being in a residential program for 5 months and an intensive outpatient program (IOP) for eight weeks, three times a week for three hours per day.[7] (*Id.*) Robyn also testified that her concentration and ability to follow instructions were better, her kidney disease was now controlled through medication, and she had no limitations walking. (*Id.*)

### 2. PAMFs and Medical Opinions in the Record

Based on the above, Judge Lee determined Robyn's "medically determinable impairments reasonably could be expected to cause symptoms and limitations." (*Id.*) However, he found Robyn's statements regarding the "intensity, persistence and limiting effects" of her symptoms "not consistent with the evidence in the record." (*Id.*) With respect to Robyn's severe impairments—hypertension, depressive disorder, anxiety disorder, and alcohol abuse disorder— Judge Lee concluded that these impairments did result in *some* limitations, but that Robyn was still capable of performing light work. (*Id.*) To support this conclusion, Judge Lee analyzed PAMFs and medical opinions from at least half-a-dozen state agency medical consultants, treating physicians, and examining psychologists, as well as the relevant medical evidence in the record.

#### a. State Agency Medical Consultant PAMFs

First, Judge Lee assessed the PAMFs of several state agency medical consultants. (*Id.* at

---

[7] According to a more recent discharge summary from July 12, 2023, Robyn was discharged after 145 days of alcohol use disorder treatment with continuing IOP. (AR at 33 (citing AR at 1109).)

33–34.) On Robyn's severe mental impairments, the consultants concluded that Robyn had moderate limitations in "understanding, remembering, []applying information, . . . interacting with others, . . . concentrating, persisting, []maintaining pace, [and] adapting or managing herself." (*Id.*)

Judge Lee concluded that these PAMFs were partially persuasive. (*Id.*) Judge Lee found that the PAMFs were supported by the consultants' examining of "the available medical records" and reference to "supporting evidence." (*Id.* at 33) However, he flagged that the consultants did not actually observe Robyn personally nor did they "incorporate the entirety of [Robyn's] limitations" into their analyses.[8] (*Id.* at 33–34.) Judge Lee also concluded that the opinions were partially consistent with the overall medical evidence that suggested Robyn was limited to light work. (*Id.* at 34 (citing AR at 825–29, 1022–43, 1105–17).)

### b. Dr. Komal Shah, Treating Psychiatrist

Judge Lee then discussed the psychiatric reports of Dr. Komal Shah, a treating psychiatrist. (*Id.* at 33–34 (citing AR at 785–90, 801–08, 1019–21).) Judge Lee noted that in one report, Dr. Shah concluded that Robyn had a mix of "moderate to marked" mental limitations, but that Robyn was ultimately capable of "doing simple work." (*Id.*; *see* AR at 802–06.) Judge Lee also flagged in a later session that Dr. Shah deemed Robyn's concentration adequate. (*Id.* at 33 (citing AR at 1019).) In that same later report, Dr. Shah also found that Robyn's thought process was logical and "goal directed," but that her mood was anxious and depressed. (*Id.*)

Judge Lee found Dr. Shah's opinions partially persuasive. (*Id.* at 34 (citing AR at 785–90, 801–08).) With respect to the support for Judge Shah's opinions, Judge Lee pointed out that Dr.

---

[8] Judge Lee noted that Robyn objected to his consideration of the PAMFs because those opinions did not come as a result of a direct examination of Robyn. (*Id.* at 34 (citing AR at 469).) Judge Lee overruled that objection on the grounds that he gave "appropriate consideration" to the PAMFs given that he qualified his analysis by flagging the lack of a direct examination, and incorporating the same into his weighing of the evidence. (*Id.*)

Shah was Robyn's own treating medical source, but that one of Dr. Shah's reports contained opinions "mostly expressed with a checkbox format, with little or no explanation for the limitations expressed." (*Id.*) Judge Lee took issue with the consistency between Dr. Shah's conclusions in one report with respect to Robyn's "moderate to marked limitations," (*see id.* at 785–90), and the record by stating that overall, the record evidence suggested that Robyn could "perform simple work," supported by "the many mental status examinations and observations made by the consultative examiners." (*Id.* (citing AR at 809–13, 1022–43).)

### c. Dr. Marc Friedman, Consultative Psychologist

Judge Lee next discussed the September 25, 2020 consultative psychological report of Dr. Marc Friedman, a licensed psychologist. Dr. Friedman found that Robyn showed no signs of a thought disorder and that her intellectual functioning was estimated to be in the average range. (*Id.* at 32–33 (citing AR at 809–10).) Dr. Friedman stated that Robyn—although she generally struggled to concentrate—completed several arithmetic and spelling cognitive evaluations correctly.[9] (*Id.*) Dr. Friedman noted that at home, Robyn performed daily hygiene on a regular basis and did routine chores like food preparation, laundry, and cleaning, but with limited motivation. (*Id.* at 33 (citing AR at 810–11).) Dr. Friedman also reported that Robyn's mood was sad, her affect was constricted, her social skills were somewhat limited, and that she started crying during the interview. (*Id.*) Dr. Friedman concluded that Robyn's short-term memory was mildly impaired, her concentration was impaired, and her working memory was severely impaired and that these conditions would last "at least one year." (*Id.* (citing AR at 811).)

Judge Lee found Dr. Friedman's opinions partially persuasive. Judge Lee found that Dr.

---

[9] Despite her successes on several cognitive evaluations, Judge Lee noted that Robyn could not complete "an arithmetic problem involving money" or "serial sevens" correctly. (AR at 32–33 (citing AR at 809–10).)

Friedman's findings were only supported by a one-time interview of Robyn, but that his opinions were nonetheless supported by the record evidence, aside from his determination about Robyn's severely impaired working memory. (*Id.* at 34) Judge Lee also determined that, while Dr. Friedman did not specify a *degree* of limitation for social interaction or concentration, Dr. Friedman's reports were consistent with the overall evidence in the record, which suggested that Robyn's concentration limitations were mild. (*Id.* (citing AR at 401, 810, 1030).)

### d.  Alla Krutyansky, Treating LCSW

Judge Lee next turned to the opinions of Alla Krutyansky, a treating LCSW. In various reports from June 2019 to October 2020, LCSW Krutyansky found Robyn to be stable, openly communicative, and motivated.[10] (*Id.* at 33 (citing AR at 822).) However, in her October 6, 2020 report, LCSW Krutyansky found that Robyn was "distracted" and had difficulty with concentration. (*Id.* at 34 (citing AR at 815–17).) LCSW Krutyansky later opined in an October 14, 2021 check-box questionnaire that Robyn had mostly moderate to marked mental limitations. (*Id.* (citing AR at 1017–18).)

Judge Lee concluded that LCSW Krutyansky's opinions were unpersuasive. Judge Lee stated that the sparse October 6, 2020 report stating that Robyn was "distracted" did not "explain [Robyn's] concentration over an extended period of time." (*Id.* (citing AR at 815–17).) Judge Lee also found that LCSW Krutyansky's conclusions "by way of check-box format" provided "little or no[] rationale." (*Id.* (citing AR at 1017–18).) Further, Judge Lee determined that LCSW Krutyansky's conclusions about Robyn's concentration were inconsistent with the broader, more fulsome medical record. (*Id.* at 34–35 (citing AR at 401, 810, 1030).)

---

[10] Judge Lee's discussion of these reports appears to misidentify it as a single report "as of" October 26, 2020. (AR at 33 (citing AR at 822).)

*e.  Dr. Christina Ryser, Treating Psychiatrist*

Finally, Judge Lee considered the November 1, 2021 report and opinions of Dr. Christina Ryser, one of Robyn's treating psychiatrists.[11] Dr. Ryser noted that Robyn had "some difficulties" with concentration and memory, but that overall there was "no clear evidence" Robyn had a formal thought disorder. (*Id.* at 33 (citing AR at 1039, 1041, 1043).) Dr. Ryser's report concluded that all of Robyn's mental limitations were moderate, moderate-to-marked, and marked and that she would be absent from work more than three days per month. (*Id.* at 35 (citing AR at 1032–33).)

Judge Lee concluded that Dr. Ryser's opinions were unpersuasive. (*Id.* (citing AR at 1029–33).) Judge Lee found Dr. Ryser's opinions unsupported by Dr. Ryser's own examination of Robyn. (*Id.*) For example, Judge Lee noted that Dr. Ryser's report specified that Robyn was able to do several arithmetical and spelling cognitive tests correctly. (*Id.* (discussing AR at 1042).) Further, and importantly, Judge Lee found that Dr. Ryser's extensive hedging language cast doubt on the "precise extent" of Robyn's limitations. (*Id.*) Judge Lee also found Dr. Ryser's opinions inconsistent with the medical evidence in the record, which suggested, in Judge Lee's view, that Robyn had "no greater than moderate limitations in mental functioning." (*Id.* (citing AR at 401, 810).)

## II.    **LEGAL STANDARD**

### A.    STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision

---

[11] Judge Lee also reviewed a third-party function report submitted by Robyn's husband Brian. (*Id.* at 35 (citing AR at 413–20).) Although Judge Lee found it "difficult [for Brian's report] to provide an objective view of [Robyn's] limitations," he nonetheless considered it to the extent it was consistent with the broader medical record. (*Id.*) Robyn did not challenge Judge Lee's consideration of Brian's report.

is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001).

Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance

of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v.

Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225

F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This

evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

 The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399

F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual

determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the

ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even

if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38

(3d Cir. 2001). The court must "review the record as a whole to determine whether substantial

evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc.

Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject

evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why

probative evidence has been rejected is required so that a reviewing court can determine whether

the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981)

(citation omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME

A claimant may establish disability under the Social Security Act by proving they are

unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III.    DISCUSSION

Robyn's arguments on appeal focus on Judge Lee's assessments of the PAMFs and medical opinions in the record, as well as Robyn's own subjective testimony.[12] In short, Robyn argues that Judge Lee incorrectly assessed Robyn's RFC and failed to properly evaluate (1) the PAMFs of the state agency medical consultants, as well as the medical opinions of Dr. Shah, LCSW Krutyansky, Dr. Friedman, and Dr. Ryser, and (2) testimony from Robyn herself. (*Id.* at 19–33.) Thus, because "all other issues have been waived," the Court restricts its review to these RFC-specific issues. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases).

### A.    PAMFS AND MEDICAL OPINIONS

Under 20 C.F.R. § 404.1520c, factors an ALJ should consider when assessing PAMFs

---

[12] As discussed, Robyn only challenges Judge Lee's assessments with reference to Robyn's *mental* impairments. (Pl. Br. at 2 n.4.)

and medical opinions include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5). The Third Circuit has explained that 20 C.F.R. § 404.1520c(c) "requires administrative judges to explain only two of the[] factors: whether medical opinions were (1) based on 'objective medical evidence and supporting explanations' and (2) consistent with other medical opinions in the record."[13] *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (quoting 20 C.F.R. § 404.1520c(b)(2)) (noting these factors are called "supportability and consistency for short").

Here, Robyn challenges Judge Lee's evaluations of the various PAMFs and medical opinions in the record, specifically Judge Lee's assessment of the opinions of Dr. Shah, Dr. Friedman, Dr. Ryser, LCSW Krutyansky, and the state agency medical consultants. Because Judge Lee explicitly analyzed the supportability and consistency of each PAMF and medical opinion in his decision, Robyn instead asserts that Judge Lee's evaluations were either (1) not clearly articulated enough for the Court (or Robyn herself) to review and/or (2) generally not supported by substantial evidence. (*See generally* Pl's Br. 21–30.) As discussed hereinabove, Judge Lee determined that the various PAMFs and medical opinions ranged from "partially persuasive" to "unpersuasive" based on his assessment of the 20 C.F.R. § 404.1520c(c) factors, including supportability and consistency. In assessing Judge Lee's analysis of each PAMF and medical opinion that Robyn now challenges, it is clear that his findings as to each are both amenable to review and supported by substantial evidence.

_____

[13] The only exception is where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3). In such a case, an ALJ is required to explicitly consider the other factors under 20 C.F.R. § 404.1520c(c). *Id.*

### 1. Dr. Shah's "Partially Persuasive" Medical Opinions

Beginning with Judge Lee's assessment of Dr. Shah, Robyn argues that Judge Lee neglected in explaining "what limitations described by the treating psychiatrist [Judge Lee] agreed with and which he did not and why." (Pl's Br. at 21.) Specifically, Robyn argues that Judge Lee's opinion "left no path at all" to her or a reviewing court to understand precisely which portions of Dr. Shah's opinions Judge Lee accepted or rejected. (*Id.* at 21–22.) Plaintiff further argues that, to the extent he rejected Dr. Shah's findings, Judge Lee "grossly mischaracterized" the record by concluding that Dr. Shah provided "little or no explanation for the limitations expressed," and that Judge Lee "wholly ignor[ed]" the evidence behind Dr. Shah's opinions. (*Id.* at 22–23.) Robyn also argues that Dr. Shah's opinions as to Robyn's mental limitations were more consistent with the record than Judge Lee credited. (*Id.* at 24–25.)

Robyn "demand[s] greater articulation than the law requires." *A.L. v. Comm'r of Soc. Sec.*, No. 24-9023, 2025 WL 3042460, at *6 (D.N.J. Oct. 31, 2025). In assessing Dr. Shah's opinions, Judge Lee explicitly applied the key supportability and consistency factors as required by 20 C.F.R. § 404.1520c(c). (AR at 34.) Moreover, contrary to Plaintiff's assertions otherwise, the Court can readily discern how Judge Lee assessed Dr. Shah's opinions as partially persuasive: While Judge Lee accepted Dr. Shah's conclusion that Robyn had "moderate to marked" mental limitations, Judge Lee clearly concluded that Dr. Shah's medical opinions were (1) not sufficiently supported by Dr. Shah's check-box form containing "little or no explanation" and (2) not wholly consistent with other medical opinions in the record, including that from Dr. Friedman. (*Id.* (citing AR at 809–13).) Hence, the Court has "sufficient information to understand the ALJ's basis for rejection" and Judge Lee provided at least "'some indication' of the evidence [he] reject[ed] and [his] reason for doing so." *Emilia N. v. Comm'r of Soc. Sec.*, Civ. No. 21-18677, 2022 WL

14834594, at *4 (D.N.J. Oct. 26, 2022) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)).

The Court also disagrees that Judge Lee "grossly mischaracterized" the record with respect to Dr. Shah's opinions. (Pl's Br. at 22.) Judge Lee's conclusions—that Dr. Shah's assessment of Robyn's limitations was not fully articulated in Dr. Shah's initial check-box report—were reasonable, and Judge Lee was not required to exhaustively assess all of Dr. Shah's findings. (AR at 34 (citing AR at 786–90)); *Davison v. Comm'r of Soc. Sec.*, No. 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements.")

Importantly, Judge Lee *did not outright reject* Dr. Shah's opinions. Judge Lee found Dr. Shah's opinions at least partially persuasive in determining that Robyn suffered severe mental impairments and was only capable of light work during the relevant period. There was no obligation for Judge Lee to accept the entirety of Dr. Shah's reports as Robyn prefers, particularly where Judge Lee considered how particular conclusions by Dr. Shah were inconsistent with the broader record. (AR at 34); *Tricia W. v. Comm'r of Soc. Sec.*, No. 24-11499, 2025 WL 3033994, at *7 (D.N.J. Oct. 30, 2025) ("In fact, an ALJ 'is under no obligation to model a residual functional capacity assessment after any medical opinion, including those deemed persuasive.'" (quoting *Myrick v. Dudek*, Civ. No. 23-1924, 2025 WL 1674485, at *8 (M.D. Pa. Apr. 21, 2025))). Thus, Judge Lee's evaluation of Dr. Shah's medical opinions is supported by substantial evidence that "a reasonable mind might accept as adequate to support [Judge Lee's] conclusion." *Morales,* 225 F.3d at 316.

### 2. Dr. Ryser's "Not Persuasive" Medical Opinions

Robyn next challenges Judge Lee's conclusions that the medical opinions of Dr. Ryser were not persuasive. As to Dr. Ryser, Robyn argues that Judge Lee's conclusions were based on a "mischaracterization of the medical evidence." (Pl's Br. at 26.) Essentially, Robyn argues that Judge Lee failed to consider portions of the medical evidence contained in Dr. Ryser's report, undermining his decision's supportability and consistency determinations under 20 C.F.R. § 404.1520c. (*Id.* at 26–27.)

The Court disagrees. Judge Lee explicitly discussed the portions of Dr. Ryser's opinions that were inconsistent with Dr. Ryser's own evaluation: Robyn "made no errors on serial sevens, . . . she could spell the word 'world' backwards[,] and she correctly performed two of four math problems." (AR at 35 (citing AR at 1029–33).) Judge Lee concluded that—in the context of Dr. Ryser's report and the broader record—this evidence did not support Dr. Ryser's conclusion that Robyn suffered from "moderate, moderate-to-marked, and marked mental limitations" or otherwise substantiate that Robyn would be absent from work "more than three" times per month, an opinion which was otherwise unsupported. (*Id.*) Indeed, Judge Lee was not required "to supply a comprehensive explanation for the rejection" of every finding in Dr. Ryser's report, and the Court is satisfied that his conclusion is supported by substantial evidence. *Jennifer M. v. Comm'r of Soc. Sec.*, No. 22-0713, 2023 WL 2601754, at *4 (D.N.J. Mar. 22, 2023) (quoting *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)); *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012).

### 3. LCSW Krutyansky's "Unpersuasive" Medical Opinions

Robyn similarly argues that Judge Lee failed to properly consider LCSW Krutyansky's medical conclusions when he determined that LCSW Krutyansky's opinions were unpersuasive.

(Pl's Br. at 25–26 (citing AR at 34–35).) Again, the Court disagrees. Judge Lee found that LCSW Krutyansky's opinions as to Robyn's inability to concentrate were inconsistent with an October 6, 2020 mental status exam that merely found her "distracted." (AR at 34 (quoting AR at 815).) Further, Judge Lee noted that the sparse, check-box format used in LCSW Krutyansky's October 14, 2021 report provided "little or no[] rationale" to support its conclusions. (*Id.* (citing AR at 1014–18).) Thus, there is substantial evidence to support Judge Lee's conclusion that LCSW Krutyansky's opinions were not supported by and inconsistent with the mental examinations in the broader record. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding that ALJ's "sufficient development of the record and explanation of findings" that "considered the appropriate factors" are enough to satisfy burden on review); *Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 125 (3d Cir. 2017) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.") (citation omitted).

### 4. Dr. Friedman's "Partially Persuasive" Opinion

Robyn also argues that Judge Lee's conclusion that Dr. Friedman's medical opinions were partially persuasive was not supported by the record. Specifically, Robyn argues that Dr. Friedman's reports, opining that Robyn had "'mild' or 'moderate' limitations in activities," were "so vague as to render [the opinions] useless." (Pl's Br. at 28–29 (citing *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000)).)

This argument is uncompelling. Dr. Friedman did not offer bare, conclusory medical opinions without specifying clinical findings as Robyn suggests. *Cf. Lizette D. v. Comm'r of Social Security*, No 22-05166, 2023 WL 6121498, at *5 (D.N.J. Sept. 18, 2023). As Judge Lee chronicled, Dr. Friedman's opinions were based on a series of memory, mathematical, and informational tests assessing Robyn's ability to recall, communicate, handle abstraction, and problem-solve. (AR at

32–33.) Judge Lee concluded that Dr. Friedman's opinions were "generally" supported by the objective evidence in his examination, as well consistent with the overall record.[14] (*Id.* at 34.) Thus, Judge Lee properly evaluated the supportability and consistency of and fairly weighed Dr. Friedman's medical opinions, and there is substantial evidence to support his conclusion that the opinion was only partially persuasive. (*Id.*)

### 5. The "Partially Persuasive" PAMFs

Robyn finally challenges Judge Lee's conclusion that the PAMFs were partially persuasive. (Pl's Br. at 27–28.) Robyn argues that the PAMFs did not review the entirety of her medical record, and that Judge Lee's "heavy reliance" on them was improper. (*Id.*) The Court, as an initial matter, may not "reweigh the evidence or impose [its] own factual determinations" when reviewing an ALJ's decision. *See Chandler*, 667 F.3d at 359. Furthermore, there is not only no indication that Judge Lee unduly favored the PAMFs in making his RFC determination, but Judge Lee specifically acknowledged the PAMFs' deficiencies, writing that the "consultants did not have the benefit of observing the claimant personally[] and they did not incorporate the entirety of the claimant's limitations." (AR at 33.) The Court is satisfied that Judge Lee fairly evaluated the PAMFs in the context of Robyn's longitudinal treatment history. Judge Lee's thorough evaluation of the PAMFs as "partially persuasive" is supported by substantial evidence that "a reasonable mind might accept as adequate to support [Judge Lee's] conclusion." *Morales,* 225 F.3d at 316.

### B.    PLAINTIFF'S OWN TESTIMONY

Robyn next argues that Judge Lee failed to properly evaluate Robyn's subjective statements as to her mental impairments. (Pl's Br. 30–33.) While "statements of the individual concerning his or her symptoms must be carefully considered" by the ALJ, the claimant's

---

[14] Judge Lee concluded that one of Dr. Friedman's opinions, that Robyn's working memory was "severely impaired," was not supported by the record evidence. (AR at 34 (citing AR at 811).)

subjective statements alone cannot establish disability. *Chandler*, 667 F.3d at 363 (citing 20 C.F.R. § 404.1529(a)). To that end, "[t]he credibility determinations of an administrative judge [made of a claimant] are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (quoting *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Nonetheless, Robyn argues that, although Judge Lee "provided a summary of some of the evidence," he failed to "provide any explanation of how the evidence is allegedly not consistent with [Robyn's subjective] statements." (Pl's Br. 32.)

Here, not only does Judge Lee's credibility determination receive a high degree of deference, but Judge Lee supported his determination with extensive evidence in the record. (AR at 31–33.) Judge Lee pointed to significant objective medical evidence that suggested Robyn's mental impairments—while severe—were not so severe as to prevent her from engaging in light work, subject to additional limitations. (*Id.* at 32–33 (citing AR 809–13, 822, 953, 1019, 1029–43)); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence…is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work."). Furthermore, Judge Lee discussed Robyn's own July 2020 function report and November 2021 pre-remand hearing testimony, where Robyn herself indicated she was capable of handling many day-to-day tasks, as well as taking care of her children and mother-in-law. (*Id.* at 30–31.) Thus, Judge Lee's determination that Robyn's subjective complaints were "not consistent with the evidence in the record" is supported by substantial evidence and given reasonable deference. (*Id.* at 31.)

In short, Judge Lee undertook a comprehensive evaluation of Robyn's own testimony, her treatment records, and the PAMFs and medical opinions in the record in constructing Robyn's

RFC. While Judge Lee acknowledged that Robyn's mental impairments were severe, there was ample evidence in the record—including from Robyn's own testimony—that Robyn's RFC was not so severe during the relevant time period to prevent her from working altogether. Not only may this Court not "reweigh the evidence or impose [its] own factual determinations," but Judge Lee's detailed, 14-paged opinion undoubtedly supports his RFC determination with substantial evidence. *See Chandler*, 667 F.3d at 359. Thus, Judge Lee logically concluded that Robyn was only capable of light work subject to additional limitations and thus not disabled during the relevant time period. Accordingly, the Commissioner's decision is **AFFIRMED**.

## <u>CONCLUSION</u>

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: December 2̲0̲, 2025